# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Specialist TRAVIS J. GARDNER**
**United States Army, Appellee**

ARMY 20120193

Headquarters, 3d Infantry Division and Fort Stewart (convened)
Headquarters, Fort Stewart (action)
Tiernan P. Dolan, Military Judge
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Elisabeth A. Claus, JA; Captain Sean P. Fitzgibbon, JA (on brief).

28 August 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KRAUSS, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of desertion in violation of Article 85, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 885 (2006).  A panel composed of officer and enlisted members also convicted appellant, contrary to his pleas, of three specifications of aggravated sexual assault upon a substantially incapacitated person in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006 & Supp. II 2009).  The panel sentenced appellant to a dishonorable discharge, ten years confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence except for the adjudged forfeitures. Appellant was also credited with 343 days against the sentence to confinement.

This case is before the court for review under Article 66, UCMJ. Appellant assigns one error and raises several matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The error assigned, and one matter raised pursuant to *Grostefon*, warrant brief discussion but no relief.

**FACTS AND PROCEDURAL BACKGROUND**

Appellant took advantage of his drunk, sleepy, and sick sister-in-law, JF, by twice penetrating her vagina on separate and distinct occasions during the course of one night, and, as part of the initial assault, inserting his fingers into her vagina. He did this, he admitted, to take revenge upon his wife, JF's sister, who he suspected of cheating on him. This admission was accompanied by other damning and self-incriminating statements made by appellant, to include: that JF never consented to any sexual activity with him; that she was passed out; that she was out of it; that he raped her; and that after he had done so he whispered in her ear "I just raped you."

JF's testimony corroborated appellant's admissions to CID. She was drunk, sick from the alcohol consumed, tired, and in and out of sleep throughout the night and during appellant's assaults upon her. She remembered appellant waking her up, penetrating her with his fingers and his penis, but testified that she was unable to move or respond or utter any words at all. She was at a loss as to why she was so paralyzed.

Others present in the house where the drinking and assaults occurred corroborated JF's severe drunkenness, illness from the drink, semi-intelligible reaction to questions, partial state of apparent conscious understanding of what was going on around her, and her falling asleep. After putting JF to bed, JF's sister was later struck by her discovery of JF with the blankets no longer covering her, the nightdress she had been wearing pulled up, and wearing no underwear. JF was also described as a generally shy person.

Appellant's defense, in relevant part, was that the government could not prove that JF was substantially incapacitated. Emphasizing JF's ability to recall and sense what happened to her with precision, and testimony that established she had some sense of what was asked of her, appellant argued she certainly was not passed out, that her claim that she could not move or speak was unbelievable, and there was at least reasonable doubt about whether she was substantially incapacitated by alcohol.

In this vein, defense counsel presented a forensic toxicologist and expert on the effects of alcohol on the body. The expert testified generally about how alcohol affects the body and cognitive abilities of a person, how it affects memory and the ability to recall, how and the distinction between a person being in a total blackout state (inability to record memory without loss of consciousness) and an alcohol

induced passed out state (loss of consciousness where one is unable to be awoken and to form and develop memory).

The defense also wanted to elicit from the expert, in essence, the following: that in his opinion a person who could remember what happened to him and perceive an assault committed upon him could not have been completely incapacitated by alcohol; that one paralyzed by alcohol would neither be conscious nor have memories of any events that occurred during the paralysis. The judge prohibited the expert from testifying that one who remembers and perceives things that happen to him when drunk was not then incapacitated by alcohol. He expressed a number of reasons that essentially boil down to these: (1) Such testimony contradicts the statutory definition of substantial incapacitation and is therefore an inadmissible substitution for the law; (2) The expert's testimony would be equivalent to "human lie detector" testimony because it would effectively comment directly on the credibility of the victim; and (3) Exercising his gatekeeper role, he ruled the testimony insufficiently reliable to admit under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## LAW AND DISCUSSION

### Exclusion of Defense Expert Testimony

We review a judge's exclusion of proffered expert testimony for abuse of discretion. *See United States v. Flesher*, 73 M.J. 303, 311 (C.A.A.F. 2014); *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993). Here we find that the judge misapprehended the proffered testimony and agree with appellant that the judge erred by refusing its admission. However, we hold that the judge's erroneous exclusion of this evidence was harmless. *See United States v. Weeks*, 20 M.J. 22, 25 (C.M.A. 1985).

*Expert Testimony and Definition of Substantial Incapacitation*

The proffered testimony neither contradicted the law nor threatened to substitute a foreign definition for substantial incapacitation under Article 120(c)(2), UCMJ. *See Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 45.a(c)(2). Neither defense counsel nor the expert ever intended or offered a definition for substantial incapacitation. Rather they simply wanted to introduce the concept that one who is completely paralyzed by alcohol is most likely in a passed out state. This would be total, not substantial, incapacitation. The defense expert made quite plain his lack of qualification to opine on whether anyone was mentally impaired in the fashion contemplated by Article 120 and declined to employ the word "incapacitation" in favor of technical terms that fell within the realm of his expertise and knowledge. His testimony reveals a conscientious and honest dedication to avoid any interference with the law as the judge would instruct.

3

As an accused might be convicted of aggravated sexual assault for committing a sexual act upon an unconscious, totally incapacitated person, as well as a substantially incapacitated person, it is certainly relevant for the defense to admit evidence to exclude that possibility. *See MCM*, pt. IV, ¶ 45.a(c)(2), (r), (t)(14). Recognizing the low threshold of relevance, it also tends to undermine the degree of incapacity suffered by the victim and is therefore relevant for the fact finder in determining whether the victim was substantially incapacitated. *See generally United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010); Military Rules of Evidence 401-403. Its exclusion on this ground is therefore an abuse of discretion. *See Houser*, 36 M.J. at 399.

### *"Human Lie Detector"*

Second, the proffered testimony was neither equivalent to nor sufficiently similar to "human lie detector" testimony to warrant exclusion. *See generally United States v. Knapp*, 73 M.J. 33 (C.A.A.F. 2014); *United States v. Brooks*, 64 M.J. 325 (C.A.A.F. 2007). JF never testified that she was paralyzed as a result of her consumption of alcohol or that she was passed out or unconscious. She testified that she was drunk, tired, in and out of sleep, and sick. She specifically testified that she had no explanation for her paralysis and repeated that testimony.

The trial counsel did state, in his opening statement, that JF was "too intoxicated to respond." In addition, an aspect of the trial counsel's closing argument can be understood to suggest that JF was substantially incapacitated by alcohol. But the government never presented evidence or argument to suggest that JF was unconscious or totally incapacitated by alcohol or in any way tie JF's credibility to the question of whether she was paralyzed by alcohol.

The defense theory of the case was that absent alcohol as the cause of JF's paralysis there existed reasonable doubt about her credibility and whether she was substantially incapacitated to physically communicate an unwillingness to engage in the sexual activity. Expert testimony that a person who is not in an alcohol induced passed out state would not be paralyzed is relevant as it tends to at least raise doubts about JF's testimony that she was paralyzed.[1] Because this evidence does not amount to "an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case," and was relevant, the evidence should not have been excluded as improper human lie detector testimony. *See*

---

[1] Even if we were to assume that the victim testified that she was incapacitated by alcohol, the expert's proffered testimony would not amount to "human lie detector" testimony under the circumstances. It is reasonable for experts to offer opinions about whether someone's description of their condition is consistent with scientific evidence accumulated on the subject. *See, e.g., United States v. Paige*, 67 M.J. 442, 450 n.9 (C.A.A.F. 2009).

*Knapp*, 73 M.J. at 36 (quoting *Brooks*, 64 M.J. at 328); *see also Houser*, 36 M.J. at 399.

*Daubert*

We review de novo whether the military judge properly followed the *Daubert* framework. *See Flesher*, 73 M.J. at 311 (citing *United States v. Griffin*, 50 M.J. 278, 284 (C.A.A.F. 1999)).

There was nothing about the proffered testimony that warranted exclusion as unreliable scientific or technical evidence. The evidence in this case points to quite the opposite. The expert testified, without challenge, that based on his established and undisputed qualifications as a forensic toxicologist, his experience and study, as well as that of his similarly qualified colleagues with whom he has discussed such subjects, he is unaware of any reported instance where a person was paralyzed by alcohol alone and yet able to remember or perceive events happening when suffering that condition. While not impossible, his opinion was that it is highly improbable. In light of his qualification and experience, his testimony is, therefore, as reliable and helpful to the panel as it is relevant and there is nothing so controversial about the proffered testimony that justifies exclusion under the principles of *Daubert*. *See generally United States v. Sanchez*, 65 M.J. 145 (C.A.A.F. 2007); *Houser*; 36 M.J. at 398-99.

*Prejudice*

Despite the relevance and reliability of the proffered testimony, however, it was, and is, a bit of a red herring. It is important to repeat that one need not be totally incapacitated to be the victim of an aggravated sexual assault under Article 120, UCMJ. In addition, one need not be substantially incapacitated by alcohol or any singular thing or condition to be a victim of an aggravated sexual assault. One might be substantially incapacitated by any number of things or combination of things including alcohol, sleep, fear, panic, and any number of mental or physical infirmities by whatever cause. The crime itself merely requires proof that the victim was substantially incapacitated or substantially incapable of appraising the nature of the sexual act, declining participation in the act, *or* communicating unwillingness to engage in the act. *See MCM*, pt. IV, ¶ 45.a(c) (emphasis added). It is fully within the competence of court-martial members to resolve whether an alleged victim was substantially incapacitated as a matter of fact with the instructions provided by the judge in this case which included: "'substantially incapacitated' means that level of mental impairment due to consumption of alcohol, drugs, or similar substance; while asleep or unconscious; *or for other reasons* . . . ." (Emphasis added). *See generally MCM*, pt. IV, ¶ 45.a(c)(2).

The testimony excluded, while relevant, was not material and did not deprive appellant of a defense. The judge's error was evidentiary not constitutional. *See*

*United States v. Garcia*, 44 M.J. 27 (C.A.A.F. 1996). Appellant was able to present and argue essentially the same points on doubts about the level of JF's incapacity despite limits on the expert's testimony. More importantly, as described above, there was never any issue in the case as to whether JF was completely incapacitated by alcohol and the evidence that she was substantially incapacitated by a number of factors was abundantly available for the panel members to reasonably conclude that she was in that condition when the appellant assaulted her. When one considers the damning statements made by appellant himself, the evidence of his guilt is overwhelming.[2] Applying the factors discussed in *Garcia*,[3] we hold that appellant suffered no prejudice from the exclusion of the proffered testimony:

(1) The government's case against appellant was strong and conclusive: Appellant admitted to committing sexual acts upon JF without her consent, to satisfy a malign purpose, when she was in an intoxicated, ill, and sleepy state; JF described her condition and testified that she was unable to move or speak when assaulted by appellant; and third party witnesses corroborated JF's condition and the sequence of events including the admitted assault.

---

[2] Even if we were to assume error of constitutional dimension, we find it harmless beyond any reasonable doubt. *See Garcia*, 44 M.J. at 28 (citing *United States v. Wilson*, 20 M.J. 31, 32 (C.M.A. 1985) (applying a harmless-beyond-a-reasonable-doubt standard in an abundance of caution)). There is no reasonable possibility that the error complained of might have contributed to the conviction. *See United States v. Ellerbrock*, 70 M.J. 314, 320 (C.A.A.F. 2011) (citations omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (listing nonexclusive factors used to determine whether an error was harmless beyond a reasonable doubt).

[3] The factors in *Garcia* are:

> First: Is the Government's case against the accused strong and conclusive?
>
> Second: Is the defense's theory of the case feeble or implausible?
>
> Third: What is the materiality of the proffered testimony?
>
> Fourth: What is the quality of the proffered defense evidence and is there any substitute for it in the record of trial?

44 M.J. at 32 (internal citations omitted).

(2)  With or without the proffered testimony, the defense's theory of the case is relatively weak:  The notion that JF lied about not being able to move or respond to the assault and that there is reasonable doubt about whether she was substantially incapacitated is comparatively feeble when compared to the strength of the government's case.

(3)  As to materiality, the question of whether or not JF was totally incapacitated by alcohol was not fairly raised by the government's theory of the case; and to the extent raised by the defense, it did little to address whether JF was substantially incapacitated.

(4)  The quality of the defense evidence was, as described above, good; and though the defense expert was permitted to testify in a fashion that provided the defense opportunity to generally establish points about the effects of alcohol on the body and memory formation, the judge's ruling did effectively prevent the defense from establishing that alcohol induced paralysis is consistent with unconsciousness.

Recognizing that the fourth factor weighs in appellant's favor, we hold that appellant did not suffer the prejudice necessary to succeed on appeal given the strength of the government's case in addition to the relative weakness of the defense theory, and the fact that the proffered testimony was not significantly material to the case.  *See Garcia*, 44 M.J. at 32; *Weeks*, 20 M.J. at 25.

### Unreasonable Multiplication of Charges for Sentencing

Shortly after the panel went out to deliberate on sentencing, defense counsel sought the judge's pardon and requested that Specification 3 of Charge I (penetration of JF's genital opening by appellant's finger) be treated as an unreasonable multiplication of charges for sentencing purposes with Specifications 1 and 2 of Charge I (penetrations of JF's vulva by appellant's penis).  The judge denied that request as untimely.  Even if we assume that exercise of our Article 66 authority would be appropriate under the circumstances to merge the specifications for sentencing as suggested, we are confident that appellant would have received a sentence at least as severe as that adjudged.  *See United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001); *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991); *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

### CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge LIND and Judge PENLAND concur.

GARDNER—ARMY 20120193



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8