# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant MARCUS V. DAVIS**
**United States Army, Appellant**

ARMY 20150100

Headquarters, III Corps and Fort Hood
Wade N. Faulkner, Military Judge (arraignment)
Rebecca K. Connally, Military Judge (trial)
Colonel Tania M. Martin, Staff Judge Advocate

For Appellant: Captain Katherine L. DePaul, JA (argued); Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul, JA (on brief).

For Appellee: Captain Samuel E. Landes, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major John K. Choike, JA (on brief).

29 September 2016

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

In this case, we find the military judge did not err in excluding information related to the victim's "escort activities" under Military Rule of Evidence [hereinafter Mil. R. Evid.] 412.

An officer panel, sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of aggravated sexual assault, one specification of abusive sexual contact, and one specification of indecent conduct in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for 180 days.

Appellant's case is before us for review pursuant to Article 66(c), UCMJ.[1] Appellant raises one assignment of error that requires discussion, but no relief– namely appellant argues the military judge erred by excluding evidence under Mil. R. Evid. 412, which resulted in the denial of appellant's constitutional right to effectively cross-examine the victim. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

## BACKGROUND

On 24 February 2012, HW, a twenty-one year old college student, went out in the evening with her friend, MS, to patronize local bars in downtown Austin, Texas. After visiting several drinking establishments and consuming several drinks, including martinis, a margarita, and shots of liquor, HW became extremely intoxicated. MS testified that on this occasion, HW was the most inebriated she had ever seen her friend.

The last bar the pair visited was the Blind Pig. At the Blind Pig, while MS was socializing with others in the bar, HW and MS became separated and HW left the bar with three men–Staff Sergeant (SSG) Slack, SSG Dumas, and appellant. Evidence indicated HW stumbled and had some difficulty walking to the car with the three men. HW had briefly met and interacted with SSG Slack, SSG Dumas, and appellant prior to entering the Blind Pig.

The men drove HW to a local hotel where they had rented a room earlier in the day. HW testified that once inside the hotel room, the men removed her clothes and began to sexually assault her. She testified that as she laid on her stomach on the bed, one man vaginally penetrated her with his penis. Next, one of the men penetrated her mouth with his penis. In sum, HW testified that she was too drunk to protest.

At some point, HW became nauseous, went to the bathroom, and threw up in the toilet. After some period of time, the men opened the bathroom door to check on her and found her sitting on the bathroom floor with her head hung over the toilet and vomit in her hair. They helped her up, gave her some water, and moved her back to the bed.

HW testified that the men placed her on her stomach on the bed and she recalled being vaginally penetrated by the penis of one of the men. She said she felt one man attempt to anally penetrate her but she was able to stop it by verbally

---

[1] Oral argument in this case was heard in Miami, Florida on 13 September 2016 at Florida International University School of Law as part of the Outreach Program of the United States Army Court of Criminal Appeals.

protesting. It is clear that at some point during the evening, each of the men engaged in sexual activities with HW. A DNA expert confirmed the presence of SSG Slack and appellant's DNA inside HW's vagina. Staff Sergeant Dumas testified he only engaged in fellatio with HW.

At trial, SSG Dumas admitted that during the sexual activities inside the hotel room, he stole money from HW's purse.

In the morning, HW awoke confused and sore, lying in bed next to appellant–vomit still in her hair–and a condom wrapper stuck to her back. Unable to remember completely what happened, she stated "I definitely had sex last night" to which appellant laughingly responded "is your sh-t f---ed up?"

Staff Sergeant Dumas testified that in the morning, HW stated "I missed out on so much money last night f---ing around with you guys, because I don't party for free." Staff Sergeant Dumas also testified that earlier in the evening, HW asked the men before the sexual activities ensued, if they had money–to which he replied "we got bread." In response, HW told the men she had more money than all of them combined.

HW took a cab home and shortly thereafter realized money had been stolen from her purse. Initially she reported to her mother that she had been mugged, but eventually told her mother she had been raped. Her mother and aunt reported the rape to authorities.

During a pretext phone call between HW and SSG Dumas in the days following the night at the hotel, SSG Dumas confirmed HW had vomited in the bathroom and described HW as "donesky," "tore-up," "wasted.com," "twisted," and "all over the place" during the evening they spent together. Staff Sergeant Dumas also told HW that he was trying stop her from falling while walking to the car, because one could be arrested for public intoxication for being "sloppy twisted" in downtown Austin.

The government's theory at trial, and the theory under which appellant was convicted, was that HW was substantially incapacitated during the sexual activity and that she, therefore, was not capable of consenting.

**LAW AND DISCUSSION**

*A. Standard of Review*

We review the military judge's ruling on whether to exclude evidence pursuant to Mil. R. Evid. 412 for an abuse of discretion. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). We review the findings of fact under a clearly

erroneous standard and the conclusions of law de novo. *Id.* The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

### B. *Exclusion of Evidence Under Mil. R. Evid. 412*

Under Mil. R. Evid. 412, evidence offered by the accused to show the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions. At trial, appellant relied on Mil. R. Evid. 412(b)(1)(C), the third exception, which allows the admission of evidence if its exclusion would violate the constitutional rights of the accused. To overcome the exclusionary purpose of Mil. R. Evid. 412, appellant must demonstrate why the general prohibition should have been lifted. *United States v. Banker*, 60 M.J. 216, 222 (C.A.A.F. 2004) (citing *United States v. Moulton,* 47 M.J. 227, 228 (C.A.A.F. 1997)). If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in Mil. R. Evid. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *United States v. Ellerbrock*, 70 M.J. 314, 318 (C.A.A.F. 2011). Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." Mil. R. Evid. 401. Evidence is material if it is "of consequence to the determination of appellant's guilt." *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted). In determining whether evidence is of consequence to the determination of appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to the issue. *United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the dangers of unfair prejudice. *See* Mil. R. Evid. 412(c)(3). "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Ellerbrock*, 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Mil. R. Evid. 412 "is intended to protect the privacy of victims of sexual assault while at the same time protecting the constitutional right of an accused to a

fair trial through his right to put on a defense." *Id.* at 322 (Baker, J., dissenting). This right necessarily includes the ability to cross-examine and to impeach or discredit a witness. The cross-examination, however, need not be "in whatever way, and to whatever extent, the defense might wish" and the military judge may limit the scope of such cross-examination when its relevance is outweighed by concerns of harassment, prejudice, or confusion of the issues. *Id.* at 318 (quoting *Van Arsdall*, 475 U.S. at 679) (additional citation omitted). "But no evidentiary rule can deny an accused of a fair trial or all opportunities for effective cross-examination." *Id.* (citation omitted).

### C. *Purpose for which Defense offered Mil. R. Evid. 412 Information*

Prior to appellant's court-martial, the appellant's trial defense counsel filed a motion to admit evidence that HW worked as an "escort" to make additional income–and that HW was quite fond of money. The defense argued that information related to HW's escorting activities was constitutionally required, in that it was necessary to effectively cross-examine HW and provide an alternative explanation as to why HW went to the hotel room with three men she had just met— she was seeking an opportunity to make money, potentially providing "escort services."

After hearing arguments, the military judge issued the following written ruling:

> Escort activities [are] admissible based on the defense's argued theory of constitutionality required to present a defense–to rebut the proposition that the alleged victim was either coaxed to leave with three strangers, or only left with them because of her intoxicated state . . . evidence that the alleged victim was an escort will be allowed, if or when the government asserts, either through opening statements or evidence otherwise adduced that the alleged victim was coaxed, or the alleged victim would never leave with strangers to go to a hotel room, or assertions of that nature.

The military judge applied the Mil. R. Evid. 403 balancing test on the record and determined that the mention of "escort activities" had minimal probative value and was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading of the members. The military judge ruled that the words "escort" and "prostitute" could not be used by defense.

After HW testified at trial, the defense renewed its request to cross-examine HW regarding her "escort" activities asserting the government had opened the door

to allow it in accordance with her earlier ruling.  Responding to the defense's assertions, the military judge denied request, stating:

> If the government in their opening or their case-in-chief presented some evidence that this Caucasian college student, upstanding citizen, would never remotely be in a hotel room with individuals of any class, race, whatsoever, multiple ones, to be able to rebut that.  If you're so concerned about not being able to rebut that you can ask her [sic] that she has either, conversed or communicated . . . with people that she does not know.  Being an escort, again that word that you desire is not necessary for you to be able to impeach her about being comfortable around strangers.  There is evidence that she's comfortable around strangers, whether it is in her extracurricular employment, activities, or people that she meets in random places, she is comfortable around strangers and you can explore that she is comfortable around strangers without talking about her being an escort.

On cross-examination, defense was allowed to engage HW in the following exchange:

> DC:  [HW] you said earlier that it was not common for you to go to random locations in Austin with random individuals, correct?
>
> HW:  Yes.
>
> DC:  In October of 2012, do you recall an incident at the Omni Hotel involving two random individuals?
>
> HW:  Yes.
>
> DC:  In which law enforcement was involved?
>
> HW:  Yes.
>
> DC:  A few months later do you recall an incident at the W hotel in downtown Austin with a random individual?
>
> HW:  Yes.
>
> DC:  And law enforcement was involved in that case?

HW: Yes.

DC: Do you recall numerous other occasions in which you met random individuals at pre-determined locations throughout Austin?

HW: Yes.

### D. Mil. R. Evid. 412 and Non-Sexual Escort Activities

The defense first asserts that the military judge erred in her application of Mil. R. Evid. 412 arguing that because HW testified her "escort" activities did not include sexual intercourse, they do not constitute sexual behavior or predisposition as defined by Mil. R. Evid. 412. We disagree.

The term "sexual predisposition" is defined under Mil. R. Evid. 412(d) as "an alleged victim's *mode of dress, speech, or lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the fact finder*." The rule covers not only sexual activity but also lifestyle information that may have a sexual connotation for a fact finder. HW testified that her escorting involved meeting men she had never met before in hotel rooms after being contacted through an online personal ad. Despite HW's assertions that sex was not part of the escort service she provided, there is undoubtedly a sexual inference associated with this described behavior. The military judge rightly concluded a sexual implication would be insinuated here.

### E. Relevant or Material

Appellant argues evidence of HW's escort activities are necessary to rebut the government's theory that HW was targeted and tricked into leaving with appellant and his comrades. We disagree and hold the military judge properly excluded the proffered evidence of escort activities under Mil. R. Evid. 412.

First, we find no evidence of an express or implied escort agreement between HW and the three men–in fact, the evidence leads to the opposite conclusion. The men did not know she was an escort. Staff Sergeant Dumas testified that only in the morning, did HW state she "lost out on money f---king around" with them and "doesn't party for free." In light of the lack of agreement, the evidence of escorting activities is not relevant.

Second, even if there were evidence of an agreement, appellant was convicted of aggravated sexual assault of a person who was substantially incapacitated. Given the government's theory of the case, the manner in which HW arrived at the

hotel room is not material. There are two elements to the offense of aggravated sexual assault that the government was required to prove beyond a reasonable doubt: (1) that the accused engaged in a sexual act with HW; and (2) that HW was substantially incapacitated. *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter MCM], pt. IV, ¶ 45.b.(3)(c). A substantially incapacitated victim cannot provide consent–even if she were an escort. Here, the panel found that HW was simply not competent to consent by virtue of her intoxication. *See* Article 120.a.(t)(14)(B)(i)(I), UCMJ. Further, we find ample evidence available for panel consideration leading them to reasonably conclude HW was substantially incapacitated when appellant sexually assaulted her.

Lastly, we find appellant's right to Confrontation under the Sixth Amendment was not violated by the military judge's limitations on cross-examination because the appellant was still allowed to sufficiently present his defense. *See United States v. Garcia*, 44 M.J. 27 (C.A.A.F. 1996).[2] Appellant was able to establish on cross-examination that HW did indeed have occasion to meet random men at hotels around Austin and that police were occasionally called during these hotel encounters. Defense counsel were able to establish 1) HW's lust for money, 2) her potential motives to fabricate, including that money was stolen from her purse the evening in question, and 3) her comments about not "partying for free" and losing out on money on the evening in question. In context, the defense was able to rebut that HW would not go to hotel rooms with strangers. Similarly, appellant was able to present and argue essentially the same points during their argument, despite limits on cross-examination of HW. We also note that at appellant's request, the panel was instructed that they could not find appellant guilty unless the government disproved beyond a reasonable doubt that appellant did not honestly and reasonably believe that HW consented.

Even if we were to assume error, we find it harmless beyond any reasonable doubt. *See id.* at 28 (citing *United States v. Wilson*, 20 M.J. 31, 32 (C.M.A. 1985) (applying a harmless-beyond-a-reasonable-doubt standard in an abundance of caution). There is no reasonable possibility that the exclusion of "escort" evidence, under the facts of this case, might have contributed to the conviction. *See Ellerbrock*, 70 M.J. at 320 (citations omitted); *see also Van Arsdall*, 475 U.S. at 684 (listing nonexclusive factors used to determine whether an error was harmless beyond a reasonable doubt). While the defense was not allowed to use the word escort, the admission of "escort-like" behavior made this restriction harmless.

---

[2] The factors in *Garcia* are: 1) strength of the government's case; 2) plausibility of the defense's theory; 3) materiality of the proffered testimony; 4) quality of the proffered defense evidence, 5) is there any substitute for it in the record of trial. 44 M.J. at 32 (internal citations omitted).

**CONCLUSION**

The findings and sentence are AFFIRMED.

Judge HERRING and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9